IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WENDY WILCE,

    Plaintiff,

    v.

THE PROCTOR & GAMBLE
DISABILITY BENEFIT PLAN,

    Defendant.

CIVIL ACTION No. 3:07-CV-0757

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court are the motions for summary judgment of Plaintiff Wendy Wilce (Doc. 11) and of Defendant The Proctor & Gamble Disability Benefit Plan ("The Plan") (Doc. 14). Because there is no question of material fact that the Defendant did not act arbitrarily and capriciously when terminating Plaintiff's long-term disability benefits, the Court grants Defendant's motion for summary judgement and denies Plaintiff's motion for summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction").

**BACKGROUND**

Plaintiff Wendy Wilce initiated this action on April 24, 2007 under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, to challenge the September 21, 2005 termination of her total disability benefits by the Defendant, The Proctor & Gamble ("P&G") Disability Benefit Plan. In her complaint, the Plaintiff alleged that the Defendant "acted arbitrarily and capriciously in denying Plaintiff's total disability benefits," that the Defendant's role as both insurer and Administrator created a conflict of interest sufficient to rescind their discretionary authority, and that Defendant breached its fiduciary

duties by delaying resolution of Plaintiff's administrative appeals and by failing to consider the opinions of Plaintiff's physicians. (Pl.'s Complaint, Doc. 1, ¶¶ 15-18.)

On November 30, 2007, Plaintiff filed her Motion for Summary Judgment (Doc. 11) along with a corresponding brief (Doc. 13) and statements of fact (Doc. 12). On December 3, 2007, the Defendant filed its own Motion for Summary Judgement (Doc. 14) with supporting brief (Doc. 17) and statements of fact (Doc. 15).[1]  On December 18, 2007, Defendant filed its Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 20) along with Defendant's Reply to Plaintiff's Statement of Material Facts (Doc. 19).  While these motions were under consideration by the Court, The United States Supreme Court decided *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008).  Since *Glenn* bears on the questions before the Court, both parties were permitted to file supplemental briefs addressing the decision's applicability in the current case and they did so on July 31, 2008.  Since the parties' summary judgment motions have now been fully briefed, the motions are now ripe for disposition.

**I. The P&G Disability Benefit Plan**

The P&G Disability Plan ("the Plan") provides benefits for both partially and totally disabled participants for up to fifty-two (52) weeks.  (Def.'s Statement of Material Facts ["Def.'s Statement"] ¶ 3.)  These benefits are funded by employee contributions and are administered by a four person Board of Trustees. (Id.)  Two members of the Board are

---

[1] Plaintiff did not file a counter statement of material facts responding to the Statement of Facts supporting Defendant's December 3, 2007 Motion for Summary Judgment.  See Local Rule 56.1. ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.")

appointed by P&G, one member is appointed by a Reviewing Board, and the fourth member is appointed by the other Trustees. (Id.; The Proctor & Gamble Disability Benefit Plan ["Plan Document"], Doc. 18, Ex. B, at P&G/WILCE 000202-09.)  During this initial fifty-two week period disabled Plan participants are entitled to sixty-six and two-thirds percent (66 2/3%) of their weekly salary at the time they ceased working. (Pl.'s Brief in Support of Motion for Summary Judgment ["Pl.'s Brief in Support"], Doc. 13, at 1-2.)  Plan participants who are partially disabled, but not totally disabled, are limited to this fifty-two week period for the receipt of benefits.  (Def.'s Statement ¶ 4; Plan Document, at P&G/WILCE 000206.)

Participants who continue to be totally disabled at the end of the fifty-two week period become entitled to benefits paid through the Proctor & Gamble Long-Term Disability Allowance Policy ("LTD Plan"). (Def.'s Statement ¶ 4;  Plan Document, at P&G/WILCE 000211; 2006 Summary Plan Description ["LTD Plan Description"], Doc. 18, Ex. D, at P&G/WILCE 000250.) Participants qualifying for continuation of payments beyond the initial fifty-two week period are entitled to payments of  fifty percent (50%) of their weekly salary at the time they ceased working.  (Pl.'s Brief in Support, at 2.)  The LTD Plan benefits are paid through a Trust that is funded by P&G. (Def.'s Statement ¶ 5;  Plan Document, at P&G/WILCE 000208; LTD Plan Description, at P&G/WILCE 000261-262.)   Two P&G appointed Trustees are responsible for administration of the LTD Plan. (Def.'s Statement ¶ 5; LTD Plan Description, at P&G/WILCE 000261-262.)

The Trustees of both the Disability Plan and the LTD Plan have discretion to determine benefits eligibility and interpretation of the respective plans.  (Def.'s Statement ¶ 7; Plan Document, at  P&G/WILCE 000208; LTD Plan Description, at P&G/WILCE 000259.) Plan participants seeking benefits first submit claims to a Reviewing Board responsible for

investigating the claim and making a recommendation to the Board of Trustees. (Def.'s Statement ¶ 8; Plan Document, at P&G/WILCE 000208-209.) The Reviewing Board at the Mehoopany plant where Plaintiff was employed consists of four members. Three of these members are elected by employees participating in the plan and the fourth member is appointed by the Board of Trustees. (Id.)

The P&G Disability Plan defines "partial disability" as:

> a mental or physical condition resulting from an illness or injury because of which the participant cannot perform regular duties but can perform other useful duties. Thus, a condition of Partial Disability does not necessarily prevent the Participant from performing useful tasks, utilizing public or private transportation or taking part in social or business activities outside the home.

(Plan Document, at P&G/WILCE 000197.) The Disability Plan, likewise, defines "total disability" as:

> a mental or physical condition resulting from an illness or injury which is generally considered totally disabling by the medical profession. Usually, total disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home.

(Plan Document, at P&G/WILCE 000199.) The LTD plan adopts the same definition of total disability. **(**LTD Plan Description, at P&G/WILCE 000263.)

**II. Plaintiff's Employment, Medical & Benefits History**

In December 1984, Plaintiff Wendy Wilce began her employment with The Proctor and Gamble Paper Products Company ("P&G") at its Mehoopany, Pennsylvania plant. (Pl.'s Statement of Material Facts ["Pl.'s Statement"], Doc. 12 ¶ 2; Def.'s Reply to Pl.'s Statement of Material Facts ["Def.'s Counterstatement"], Doc. 19 ¶ 2; Def.'s Statement ¶ 1.) During her employment with P&G, Plaintiff was a participant in a long term disability plan sponsored by P&G and maintained by Defendant, The Proctor & Gamble Disability Benefit Plan. (Pl.'s

4

Statement ¶ 3; Def.'s Counterstatement ¶ 3; Def.'s Statement ¶ 2.)

In a letter dated February 13, 2006, Sean McCall, M.D., Plaintiff's physician since 2002, listed the Plaintiff's diagnoses while under his care as:

> IGA, Anemia of chronic disease; asthma; hypertension; depression; morbid obesity; lifelong prednisone therapy; rotator cuff syndrome [in] right shoulder; lumbar disc disease; dyslipidemia; pulmonary embolism with unknown cause; severe ankle deformities requiring braces for stability and ambulation; history of CVA; seizure disorder; thoracic disc protrusion; lifelong Coumadin therapy; obstructive sleep apnea; history of DVT; bilateral knee osteoarthritis which most likely will need replacement in the future.

(Joint App'x., Doc. 18, Ex. A, at P&G/WILCE 000121.)  Dr. McCall further stated that the Plaintiff was "unable to do anything the least bit physically demanding on her job. [...] She is also unable to do any office work with any prolonged effort secondary to back pain." (Id.)

Due to her various medical conditions, Plaintiff received partial disability payments under the plan from January 9, 2003 through February 4, 2003. (Id., at P&G/WILCE 000173.)  On April 28, 2004, the Plaintiff ceased active employment with P&G and began receiving benefit payments from the Plan as a totally disabled participant as of April 30, 2004. (Id.) On October 8, 2004, the Plaintiff underwent an Independent Medical Evaluation ("IME") at the request of Defendant and was examined by Michael D. Wolk, M.D.. (Id., at P&G/WILCE 000175-180.)  In his evaluation, Dr. Wolk noted that "certainly there would be no reason why [Plaintiff] would not be capable of returning to a sedentary type of position." (Id., at P&G/WILCE 000180.)  Based on Dr. Wolk's evaluation, the Mehoopany Disability Review Board recommended that Plaintiff return to partial disability status effective October 8, 2004.  (Id., at P&G/WILCE 000173.)  On October 18, 2004, the Plan's Board of Trustees ratified the Review Board's recommendation and notified the Plaintiff that she was being returned to partial disability status. (Id., at P&G/WILCE 000171-172.)

On January 26, 2005, the Plaintiff presented the Plan with a physician's certificate that indicated that she was totally disabled effective as of December 13, 2004. (Id., at P&G/WILCE 000170.) From December 13, 2004 to September 21, 2005, the Plaintiff received total disability benefits under the Plan. (Id., at P&G/WILCE 000012-14.) On September 21, 2005, Plaintiff underwent a second IME at Defendant's request and was examined by William R. Prebola, M.D.. (Id., at P&G/WILCE 000016-23.) In his review of the IME, Dr. Prebola stated that "[Plaintiff] is not completely and totally disabled, based on all of her medical conditions. I believe that sedentary work on a full-time basis is certainly within her physical capabilities." (Id., at P&G/WILCE 000021.) Based on Dr. Prebola's report, the Mehoopany Disability Review Board recommended that Plaintiff return to partial disability status effective September 21, 2005. (Id., at P&G/WILCE 000014.) On November 7, 2005, the Plan Trustees adopted the Board's recommendation and returned Plaintiff to partial disability status. (Id., at P&G/WILCE 000012-13.)

On March 24, 2006, Plaintiff appealed the Plan Trustees' November 7, 2005 determination that she should return to partial disability status. (Id., at P&G/WILCE 000096-97.) In support of her appeal, Plaintiff provided the Plan with extensive medical records from her own physicians. (Id., at P&G/WILCE 000096-165.) On May 30, 2006, the Plan Trustees determined that Plaintiff no longer qualified for total disability and affirmed the November 7, 2005 decision to return Plaintiff to partial disability status, noting that "the objective medical data does not indicate that [Plaintiff] is totally disabled as defined by the Plan. It does not indicate that she requires care in a hospital, or confinement to the home, or that she is unable to do sedentary work that may be available to her." (Id., at P&G/WILCE 000010-11.)

Subsequent to the Plan's decision to return the Plaintiff to partial disability status in

6

September 2005, the Plaintiff briefly returned to total disability on two occasions. On November 15, 2005, Plaintiff had arthroscopic surgery on her right knee and was returned to full disability status for a period of fifty-six (56) days. (Def.'s Counterstatement ¶ 17.) Similarly, on January 19, 2006, Plaintiff had arthroscopic surgery on her left knee and, once again, returned to total disability status for an additional fifty-six (56) days. (Def.'s Counterstatement ¶ 18.) On December 11, 2006, the Plan notified the Plaintiff that she had exhausted the maximum lifetime total of partial disability benefits and that these benefits would be terminated as of January 10, 2007. (Joint App'x., Doc. 18, Ex. A, at P&G/WILCE 000001.)

## LEGAL STANDARD

### I. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**II. ERISA Standard**

The Plaintiff brought this action against the P&G Disability Benefit Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover her total disability benefits. The United States Supreme

Court has held that a

> denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When an ERISA-governed plan provides the plan administrator with authority over benefit eligibility, judicial review of a benefits decision is limited to determination of whether the administrator's decision was arbitrary and capricious. *See Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 281-82 (3d Cir. 2005); *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 44-45 (3d Cir. 1993); *Maciejczak v. Proctor & Gamble Co.*, No. 3:02-cv-01041, 2006 WL 860150, at *7 (M.D. Pa. Mar. 31, 2006), *aff'd.* 2007 WL 1700709 (3d Cir. July 5, 2007). "Under this standard, an administrator's decision 'will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Maciejczak*, 2006 WL 860150, at *7 (*quoting Vitale*, 420 F.3d at 282).

"Where, however, an administrator with discretionary authority to decide eligibility for benefits is burdened by a conflict of interest, 'that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* (*quoting Firestone*, 489 U.S. at 115). The Third Circuit Court of Appeals has interpreted the Supreme Court's *Firestone* decision as requiring heightened review of discretionary decisions made by potentially partial plan administrators. *Pinto v. Reliance Standard Life Insurance Co.*, 214 F.3d 377 (3d Cir. 2000). The impartiality of an administrator is called into question when "the structure of the plan itself inherently creates a conflict of interest" or when "the beneficiary has put forth specific evidence of bias or bad faith in his or her particular case." *Goldstein v. Johnson &*

9

*Johnson*, 251 F.3d 433, 435-36 (3d Cir. 2001).  "This 'heightened form or review is to be formulated on a sliding scale basis' reflecting the degree of conflict."  *Maciejczak*, 2006 WL 860150, at *7 (*quoting Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 254 (3d Cir. 2004).

In the current case, neither party disputes that Trustees for the Disability Benefit Plan and the LTD Plan have been provided the authority to make determinations concerning total and partial disability benefits.  The Plaintiff, however, alleges that these Trustees possess a conflict of interest that entitles her to a heightened level of scrutiny.

This Court has previously examined the P&G plans to determine whether the Plan Trustees possessed conflicting interests sufficient to warrant a more intense level of review than the deferential arbitrary and capricious standard.  *Maciejczak*, 2006 WL 860150; *Carpenter v. Proctor & Gamble Disability Plan*, No. 3:CV-03-0399, 2006 WL 860060 (M.D.Pa. Mar. 31, 2006), *aff'd.* 229 Fed. Appx. 10 (3d Cir. 2007)   In each case, Judge Vanaskie noted that the

> [Third Circuit] Court of Appeals has made a distinction between employer-funded plans that are actuarially grounded and plans that are funded on a case-by-case basis. *See Skretvedt v. E.I. DuPont de Nemours & Co.*, 268 F.3d 167, 174 (3d Cir.2001). An actuarially grounded plan, "with the company making fixed contributions to the pension fund, and a provision requiring that the money paid into the fund may be used only for maintaining the fund and paying out pensions," generally does not trigger the sort of conflict of interest requiring a heightened form of review. *Pinto*, 214 F.3d at 388; *see also Vitale*, 420 F.3d at 282. This is because "the employer in such a circumstance 'incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits.' " *Pinto*, 214 F.3d at 388 (quoting *Abnathya*, 2 F.3d at 45 n. 5, and *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 n. 4 (3d Cir.1997)). In contrast, an employer-fiduciary may be subject to a conflict of interest when administering a plan funded on a case-by-case basis, because benefits are paid "out of operating funds rather than from a separate ERISA trust fund." *Vitale*, 420 F.3d at 282.

10

*Maciejczak*, 2006 WL 860150, at *8; *Carpenter*, 2006 WL 860060 at *6. After reviewing the P&G LTD Plan in both *Maciejczak* and *Carpenter*, the Court found that "it does not appear that the [LTD Plan] is funded on a case-by-case basis so as to warrant heightened scrutiny." *Maciejczak*, 2006 WL 860150 at *8*; *Carpenter* 2006 WL 860060 at *6*. However, the Court also found that P&G could reduce its fund contributions if the Plan made fewer or lower disability payments. *Id.* "Thus, a potential conflict of interest exists for the P&G-appointed Trustees to reduce the actual disability payments under the plan by applying a stricter standard to disability claims." *Id.* As a result of this potential conflict, the court determined that a "a highly deferential standard does not seem appropriate" when reviewing the P&G Plan. *Id.* The Court, however, did not employ a strict standard of review. Instead, the Court identified factors that mitigated the potential conflict of interest, including the Plan's provisions for independent third party reviews of claims and the fact that the Trustees were potential beneficiaries under the plan who received no compensation for serving as administrators. *Maciejczak*, 2006 WL 860150 at 9; *Carpenter* 2006 WL 860060 at *7. Consideration of these factors led the Court to determine that "a slightly heightened arbitrary and capricious standard of review" was appropriate for reviewing the P&G Plan. *Id.*

Recently, in *Metropolitan Life Insurance Co. v. Glenn*, the United States Supreme Court declared that a conflict of interest exists when a single entity "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." 128 S.Ct. 2343, 2346 (2008). Accordingly, once such a conflict is identified, reviewing courts "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the

11

circumstances of the particular case." *Id.* (*citing Firestone,* 489 U.S., at 115.)  The Supreme Court continued by both reaffirming and elucidating what it had previously set forth in *Firestone*, "namely, that a conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* at 2350 (*quoting Firestone*, 489 U.S., at 115).  "*Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at 2351.  The *Glenn* Court continued:

> The conflict of interest at issue [...] should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision [...].  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* (citations omitted).

The *Glenn* decision is not at odds with the method of analysis previously endorsed by the Third Circuit Court of Appeals and used by this Court in both *Maciejczak* and *Carpenter*.  As discussed above, in these cases, the Court identified a potential conflict of interest in the P&G LTD Plan's funding and administration.  *Maciejczak*, 2006 WL 860150 at *8*; Carpenter* 2006 WL 860060 at *6.*  This potential conflict was then weighed in relation to other factors, including the Defendant's efforts to ameliorate this conflict of interest.  *Id.*  This approach is identical to the "combination-of-factors" method of review the Supreme Court established in *Firestone* and supported in *Glenn*.  Accordingly, the Court applies this method in the current case and reviews the LTD Plan Trustees' decision to terminate the Plaintiff's total disability benefits under a slightly heightened arbitrary and capricious standard

of review.

## DISCUSSION

The Plaintiff's benefits under the LTD Plan were terminated when the Plan's Trustees determined that she was not totally disabled as required by the plan. The Plan Trustees made their decision to terminate Plaintiff's long-term benefits in accordance with a September 21, 2005 recommendation from the Mehoopany Disability Review Board. The Review Board's decision was based primarily on an independent medical evaluation performed by Dr. William R. Prebola, concluding that the Plaintiff was capable of performing sedentary work on a full-time basis.

The Plaintiff argues that the Defendant acted arbitrarily and capriciously when terminating her long term disability benefits. In support of this argument she alleges that the Defendant relied upon the report of a physician who saw the Plaintiff only once rather than basing its benefits decision on reports from Plaintiff's physicians who evaluated her on several occasions. Accordingly, the case here involves a difference of opinion between evaluating physicians concerning the extent of Plaintiff's disability, and the question before this Court is whether the Defendant's decision was arbitrary and capricious in light of any conflicts of interest present.

In *Stratton v. E.I. DuPont De Nemours & Co.*, the Third Circuit Court of Appeals encountered a similar question and noted that "[a] professional disagreement does not amount to an arbitrary refusal to credit" the claimant's doctor. 363 F.3d 250, 258 (3d Cir. 2004). Furthermore, the United States Supreme Court has stated that "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black &*

*Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id.* at 834.

The Defendant met its obligation in this case. The Court's review of the documents submitted by Plaintiff and Defendant clearly shows that the Trustees of the P&G Disability Benefit Plan considered all of the medical evidence presented in relation to Plaintiff's disability claims. Notably, the IME report submitted by Dr. Prebola to the Disability Review board in advance of the Board's October 3, 2005 recommendation that the Plan Trustees return the Plaintiff to partial disability clearly shows that Dr. Prebola conducted an extensive medical records review that included records from the Plaintiff's personal physicians. The Defendant's comprehensiveness is further evidenced by a May 8, 2006 Independent DB Case Review compiling medical records from numerous physicians, including the Plaintiff's own treating physicians. (Joint App'x., Doc. 18, Ex. A, at P&G/WILCE 000002-9.) Furthermore, Dr. Prebola's September 2005 IME report is largely corroborated by the report from the October 2004 independent medical evaluation conducted by Dr. Michael D. Wolk.

The Trustees' decision to accept the Disability Review Board's recommendation which accepted Dr. Prebola's opinion over the opinions of the Plaintiff's physicians was not arbitrary and capricious, even under a standard of heightened scrutiny. The medical evidence presented in regard to Plaintiff's disability claim is conflicted, and the decisions of the Review Board and the Trustees in the presence of this conflict must be respected. *See*

*Leahy v. Ratheon Co.*, 315 F.3d 11, 18-19 (1st Cir. 2002). Dr. Prebola is an independent physician and the opinion he submitted to the Review Board and Plan Trustees largely comports with the prior opinion submitted by Dr. Wolk, another independent physician. The similar diagnoses between these two independent medical professionals substantiates the conclusion that neither the Review Board, nor the Plan Trustees acted arbitrarily. *See Carpenter*, 2006 WL 860060, at *9; *Grossman v. Wachovia Corp.*, No. Civ.A. 04-3701, 2005 WL 2396793, at *8 (E.D.Pa. Sept. 27, 2005).

## CONCLUSION

Because there is no question of material fact that the Defendant did not act arbitrarily and capriciously when terminating Plaintiff's long-term disability benefits, the Court will grant Defendant's motion for summary judgment (Doc.14) and deny Plaintiff's motion for summary judgment (Doc. 11).

An appropriate order follows.

 September 11, 2008                               /s/ A. Richard Caputo
Date                                              A. Richard Caputo
                                                  United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WENDY WILCE,

    Plaintiff,

        v.

THE PROCTOR & GAMBLE
DISABILITY BENEFIT PLAN,

    Defendant.

CIVIL ACTION No. 3:07-CV-0757

(JUDGE CAPUTO)

## **ORDER**

Now, this 11th day of September, 2008, it is **HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Doc. 14) is **GRANTED.**

2. Plaintiff's motion for summary judgment (Doc. 11) is **DENIED.**

3. The Clerk of Court is directed to enter judgment in favor of Defendant and to mark this matter **CLOSED.**

                                      /s/ A. Richard Caputo
                                      A. Richard Caputo
                                      United States District Judge